USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/29/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
SRINIVAS PARUCHURI,

                                          Plaintiff,              22-CV-10998 (VEC)

                  -against-                         **MEMORANDUM**
                                                              **OPINION & ORDER**

RE.IMAGIN, INC., JENNIFER SNAPE, and
"JOHN DOE" and "JANE DOE," number 1
through 10, fictitiously named parties or entities,
true names unknown, the parties intended being
the managers, operators, or successors of the
business being carried on by defendants
RE.IMAGIN, INC. and JENNIFER SNAPE,

                                          Defendants.
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

       Plaintiff Srinivas Paruchuri ("Plaintiff") sued Defendants Jennifer Snape ("Snape") and Re.Imagin, Inc. ("Re.Imagin," or the "Company") in the Supreme Court of the State of New York for New York County. *See* Notice of Removal, Ex. A at 4, Dkt. 1-1 ("Verified Compl."). On December 30, 2022, Defendants removed the case to this Court, invoking diversity jurisdiction. *See* Not. Plaintiff has moved to remand the case to state court, pursuant to 28 U.S.C. § 1441(b)(2). *See* Pl. Mem. at 1, Dkt. 10-1. For the following reasons, Plaintiff's motion to remand is GRANTED.

## BACKGROUND[1]

Plaintiff is a computer engineer whom Snape hired to serve as Chief Technology Officer ("CTO") and Co-Founder of Re.Imagin in April 2022. Verified Compl. at 1.[2] Snape allegedly promised Plaintiff a 35% equity ownership stake in the Company, a seat on the Company board, and an annual salary of $150,000 that was deferred until 2023. *Id.* at 2, 5. Snape represented to Plaintiff that the salary deferral was necessary because she needed to close a round of financing, which would be completed by August 31, 2022. *Id.* at 2. Plaintiff accepted Snape's offer and commenced work as CTO. *Id.* at 6.

The financing round did not close by August 31, 2022. *Id.* at 2–3. Shortly thereafter, Snape and Plaintiff's relationship began to deteriorate. *Id.* at 3. Snape proposed to modify the terms of Plaintiff's employment agreement by changing his title from CTO to "Senior Developer," reducing his compensation by more than half, and reducing his equity stake from 35% to 4%. *Id.* Plaintiff did not accept this proposed modification. *Id.*

On November 10, 2022, Plaintiff filed this lawsuit in the Supreme Court of the State of New York, seeking damages of at least $4,200,000. *See* Verified Compl. Defendant Snape was personally served at 215 W. 79th Street, Apt. 4A, New York, New York 10024-6242 (the "NYC Apartment") on November 18, 2022, and Defendant Re.Imagin accepted service of the Summons and Verified Complaint through counsel in New York on December 1, 2022. Pl. Mem. at 1; Not. ¶ 2.

---

[1] All well-pleaded facts are taken from the Complaint and are presumed true for the purpose of deciding this motion. *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006); *see also Skull Valley Band of Goshute Indians of Utah v. U.S. Bank Nat'l Ass'n*, 2020 WL 7490113, at *1 (S.D.N.Y. Dec. 21, 2020).

[2] Inexplicably, the allegations in the Complaint are not consecutively numbered. Accordingly, citations to the Complaint will be to the page on which the allegations appear.

On December 30, 2022, Defendants, invoking diversity jurisdiction, removed the case to this Court.³  *See* Not.  Plaintiff, a resident of Connecticut, alleged that Snape resides at the NYC Apartment and that Re.Imagin maintains its principal place of business at the same location.  Verified Compl. at 4.  Defendants, in contrast, assert that Snape is domiciled in the United Kingdom and that Re.Imagin is incorporated in Delaware with its principal place of business in the United Kingdom.  Not. ¶¶ 4–5.

On January 27, 2023, Plaintiff moved to remand the case pursuant to 28 U.S.C. § 1441(b)(2).  *See* Pl. Mem. at 1.  Plaintiff maintains that Snape and the Company were citizens of New York before, during, and after the commencement of this action, and, therefore, removal to this Court was improper.  *Id.* at 1, 4.  Plaintiff also seeks costs pursuant to 28 U.S.C. § 1447(c).  *Id.* at 9–10.

## DISCUSSION

Defendants may only remove a civil action initially brought in a state court if a federal court has original jurisdiction over the action at the time of removal.  28 U.S.C. §§ 1441(a), 1446; *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 357 (2d Cir. 2011).  This Court has diversity jurisdiction if there is complete diversity between the parties and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  "For purposes of diversity jurisdiction, [an individual's] citizenship depends on his domicile."  *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998).  Domicile is determined by the individual's (1) physical presence in a particular state; and their (2) intent to remain in the state indefinitely.  *See id.*  A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business.  28 U.S.C. § 1332(c)(1).  "A corporation's principal place of business under § 1332 is 'the place where a

---

³ Although Defendants invoked this Court's diversity jurisdiction, 28 U.S.C. § 1332(a), Defendants incorrectly cited 28 U.S.C. § 1331 (federal question jurisdiction) as the basis for removal.  Not. ¶ 8.

3

corporation's officers direct, control, and coordinate the corporation's activities.'" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010)).

Where, as here, diversity jurisdiction is the basis of removal, removal is prohibited if any properly joined and served defendant is a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b)(2). This is known as the "forum defendant" rule. *See Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019).[4]

Plaintiffs may move to remand a case to state court after removal and, if successful, may recover costs. 28 U.S.C. § 1447(c). When opposing a motion to remand, the removing party has the burden to show that it has met the requirements for removal, including compliance with the forum defendant rule. *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). "Where . . . jurisdictional facts are challenged, the party asserting jurisdiction must . . . 'justify [its] allegations by a preponderance of evidence.'" *Id.* at 305 (quoting *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

Here, no party contests that complete diversity exists or that the amount in controversy exceeds $75,000. The dispute turns on whether either of the Defendants is a citizen of the forum state. If either Snape or the Company is a citizen of New York, as Plaintiff alleges, then the forum defendant rule applies, and removal was improper.

---

[4] Removal must also comply with Local Rule 81.1, which provides: "If the Court's jurisdiction is based upon diversity of citizenship, and regardless of whether or not service of process has been effected on all parties, the notice of removal shall set forth[:] (1) in the case of each individual named as a party, that party's residence and domicile and any state or other jurisdiction of which that party is a citizen for purposes of 28 U.S.C. § 1332 . . . ." S.D.N.Y. Local Civ. R. 81.1.

## I. Defendants Have Failed to Meet Their Burden of Showing that Snape Is Not a Citizen of the Forum State

Defendants argue that Snape is not domiciled in New York because she has resided in London since February 2022 and "has no current plans to move elsewhere." Def. Mem. at 2, Dkt. 12; *see also* Not. ¶ 4; Decl. of Jennifer Snape ¶ 2, Dkt. 4. In support, Defendants primarily rely on the declarations of Snape, her uncle, and her fiancé's landlord. *Id.*; Decl. of Jennifer Snape, Dkt. 12-1; Decl. of Jennifer Snape, Dkt. 18; Decl. of Tomasz Magierski, Dkt. 12-2; Decl. of Dominic Clifford, Dkt. 12-3. Defendants, however, have failed meaningfully to refute evidence to the contrary: that Snape was a citizen of New York at all relevant times during this litigation.

In her declaration, Snape claims, *inter alia*, that she only spent 87 days in New York during 2022, Decl. of Jennifer Snape ¶ 9, Dkt. 12-1; that when she visits New York, she stays with her uncle at his apartment in Manhattan, *id.* ¶ 10; that she lives with her fiancé in an apartment in London, *id.* ¶ 8; and that she filed taxes in Massachusetts in 2021, *id.* ¶ 6. Snape further claims that she was only in New York to retrieve her wedding veil at the time she accepted service of the complaint, a fact that was supposedly known to Plaintiff. *Id.* ¶¶ 11–12. Finally, Snape offers copies of three text conversations with Plaintiff: one from May 2022,[5] in which she welcomed Plaintiff to London and offered to text him "when [she] get[s] home"; another in which she referred to herself as being "homeless" in New York; and a third in which

---

[5] Exhibit E, which purportedly reflects messages sent between Plaintiff and Snape, only contains timestamps, but no actual dates, on which each message was transmitted. Decl. of Jennifer Snape, Ex. E, Dkt. 12-1. Snape claims in her declaration that the messages were exchanged in May 2022. *Id.* ¶ 25.

she stated that she was in New York on the roof of her uncle's apartment. *Id.* ¶¶ 25, 15–16; Exs. E, C–D.[6]

Defendants' threadbare assertions are unpersuasive. Although Snape claims to have spent just 87 days in New York in 2022, she fails to state whether she spent more than 87 days in any other single location, let alone that she spent more than 87 days in London.[7] Even if the Court were to credit Snape's uncorroborated statement, *id.* ¶ 9, "[t]here is no minimum period necessary to establish domicile." *Hidalgo v. City of New York*, 2015 WL 1729811, at *2 (S.D.N.Y. Apr. 14, 2015) (granting remand because Plaintiff re-established New York domicile just months prior to bringing the lawsuit). In other words, all that matters is where the party was domiciled at the time the action commenced and when it was removed. *See Hallingby v. Hallingby*, 574 F.3d 51, 56–57 (2d Cir. 2009); *see also Marathon CRE 2018-FL1 Issuer, Ltd. v. 257-263 W 34th St. LLC*, 2023 WL 1815195, at *5 (S.D.N.Y. Feb. 7, 2023).

Snape's uncle provides a declaration that asserts the following: that he "presently reside[s]" at the NYC Apartment; that he has lived in the one-bedroom apartment for more than 25 years; that he has "always allowed family members, including [Snape], to stay at the [NYC Apartment] when visiting New York City;" and that Snape and her fiancé were staying with him at the NYC Apartment when she was served. Decl. of Tomasz Magierski ¶¶ 2–5. Nowhere does

---

[6] Snape also provided a redacted copy of a TurboTax confirmation of the filing of a 2021 Massachusetts Tax Return, Decl. of Jennifer Snape, Ex. A, Dkt. 12-1, and a receipt for automatic payment to Public Storage in Massachusetts, *id.*, Ex. B.

[7] There is some evidence in the record to suggest that Snape may have been domiciled in Illinois for at least part of 2022. Snape claims that she lived in Chicago at her parents' home in January 2022, Decl. of Jennifer Snape ¶¶ 7–8, Dkt. 18; she also provides an invoice from May 2022 — an invoice apparently for incorporating "RE.IMAGIN LTD" in the U.K. — reflecting an Illinois address for Snape, Decl. of Jennifer Snape ¶ 17, Ex. I, Dkt. 12-1. Defendants provide no additional detail to suggest that Snape was domiciled in Illinois, nor do they argue that she was an Illinois domiciliary at the time this case was commenced or removed.

he provide any estimate of the total amount of time that Snape has stayed in the NYC Apartment or how frequently she visits.

The fiancé's U.K. landlord's declaration fares no better. In it, the landlord states only that Snape has resided at his property since February 2022 and that Snape's fiancé leases a bedroom from him "through an annual rent-a-room lease agreement." Decl. of Dominic Clifford ¶¶ 3–4. The landlord offers no other facts that would aid the Court in assessing the amount of time Snape has spent at the property, the frequency and duration of her stays, or whether the landlord has ever observed her conducting any business there, despite the landlord's assertion that he also resides at the property, *id.* ¶ 2.

Self-serving declarations and a few text messages offer little proof of Snape's domicile in London, particularly given the absence of any claim that she paid rent or for utilities in the U.K., applied for or obtained a U.K. driver's license, held U.K. brokerage or bank accounts, became a member of any U.K. organizations, or paid any U.K. taxes. *See, e.g.*, *Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009) (finding plaintiff had established domicile in New Jersey by, *inter alia*, signing a lease for an apartment, applying for a driver's license, and filing taxes in the state).

Most significantly, Defendants fail adequately to explain the evidence Plaintiff points to tending to show that Snape was domiciled in New York at the time the action was commenced and when it was removed. First, Snape personally accepted service in New York City. Pl. Mem. at 1; Decl. of Srinivas Paruchuri ¶¶ 7–8, Ex. 2, Dkt. 10-4. Although Snape speculates that Plaintiff knew she would be in town that weekend, Decl. of Jennifer Snape ¶ 12, Dkt. 12-1, she provides no evidence to prove that Plaintiff was aware of her plans to be in New York and

perfectly timed the process server accordingly.[8]  Further, Snape's claim that she was only present in New York City the weekend she was served to retrieve a wedding veil, *id.* ¶ 11, lacks any corroborating evidence, such as travel documents, flight confirmation numbers, travel receipts, or any other documentation, to support the assertion that she was in town for a limited purpose or otherwise to prove the duration of her stay.  That Snape just happened to be in New York City on the day she was served with the complaint strains credulity.

By contrast, Plaintiff has proffered significant additional evidence in support of his argument that Snape is and was domiciled in New York; his evidence includes numerous work communications in which Snape claimed that she is "normally" in "NYC," referred to New York City as "home," and stated that she was "on the East Coast."  Decl. of Srinivas Paruchuri ¶¶ 14(a)–(b), (e); Ex. 7, Dkt. 10-9; Ex. 8, Dkt. 10-10; Ex. 11, Dkt. 10-13.  Plaintiff has also presented work communications in which Snape stated that she "look[ed] forward to hosting" a colleague in "NYC," *id.*, Ex. 12, Dkt. 10-14, and that she was "based in NYC," Decl. of Srinivas Paruchuri ¶ 5(i), Ex. 35, Dkt. 15-12.  Defendants have not explained the communications in which Snape stated that she and her fiancé were looking for "nyc leases" starting in mid-September 2022, *id.* ¶ 11, Ex. 10, Dkt. 10-12; nor have they disputed the screenshots of Snape's LinkedIn profile listing her location as "New York, New York" prior to and during the current action, Decl. of Srinivas Paruchuri ¶¶ 16, 18; Ex. 23, Dkt. 10-25; Ex. 24, Dkt. 10-26; Decl. of Srinivas Paruchuri ¶ 10; Ex. 38, Dkt. 15-15.

Altogether, Defendants offer limited evidence of Snape's fleeting connections to London and are nearly silent in response to Plaintiff's evidence of Snape's connections to New York.

---

[8]  For his part, Plaintiff asserts that he has only known her to live at the NYC Apartment and that is the only reason he thought Snape would be at the NYC Apartment at the time of service.  Decl. of Srinivas Paruchuri ¶ 13, Dkt. 15-1.

That is far from sufficient to meet their burden to show by a preponderance of the evidence that removal was proper because Snape was not a New York domiciliary at the time the action was commenced or when it was removed. In short, Defendants have failed to prove that Snape was not a citizen of New York for the purpose of the forum defendant rule.

## II. Defendants Have Failed to Meet Their Burden to Establish that Re.Imagin Is Not a Citizen of the Forum State

Because Defendants have failed to prove that Snape was not a citizen of New York at the commencement of the action or at the time of removal, the forum defendant rule was violated and removal was improper. 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the . . . defendants is a citizen of the State in which such action is brought."); *see Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704–05 (2d Cir. 2019). But even if Defendants established that Snape was domiciled outside of New York, removal still would have been improper because Defendants have failed to prove that the Company is not a New York citizen.

The parties agree that Re.Imagin was incorporated in Delaware and is, therefore, a citizen of Delaware. *See* Not. ¶ 5; Decl. of Jennifer Snape, Ex. A, Dkt. 4-1; Verified Compl. at 4. The parties dispute the location of the Company's principal place of business. To defeat Plaintiff's motion, Defendants must show that the Company's principal place of business is not in New York. A company's principal place of business is determined using the "nerve center" test,

which asks where a corporation's activities are directed, controlled, and coordinated.[9] *Hertz*, 559 U.S. at 92–93.

Because the Company had few, if any, employees, and was primarily run by its founder and CEO Snape, Decl. of Jennifer Snape ¶ 5, Dkt. 4, Defendants must show that Snape did not "direct, control, and coordinate the corporation's activities" from New York. *OneWest Bank*, 827 F.3d at 218; *Hertz*, 559 U.S. at 92–93. Defendants have failed to meet that burden: except in isolated circumstances, the evidence shows that Snape's direction, control, and coordination of the corporation's activities took place in New York.

Defendants argue that the company's principal place of business is in the U.K.[10] Def. Mem. at 1. First, Defendants claim that, since April 2022, Re.Imagin has maintained office space at a London co-working building. Def. Mem. at 6. In support, Defendants provide an email reflecting a successful application for the office space, Decl. of Jennifer Snape ¶ 22, Ex. F, Dkt. 12-1, and text message correspondence between Snape and Plaintiff regarding the office space, *id.* ¶ 24, Ex. H.

---

[9] Defendants propose using the "place of operations" test as opposed to the "nerve center" test described by the U.S. Supreme Court in *Hertz*. *See* Def. Mem. at 5. "Under [the place of operations] test, a corporation's principal place of business is located in the state with which the corporation has its most extensive contacts [], or its greatest impact on the general public." *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 471 (S.D.N.Y. 2005). While the Second Circuit previously applied the so-called "place of operations" test, *see, e.g.*, *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651 (2d Cir. 1979), it has not done so since *Hertz*, *see, e.g.*, *OneWest Bank*, 827 F.3d at 218. Indeed, some courts have explicitly recognized that *Hertz* rejected the "place of operations" test. *See Greene v. Paramount Pictures Corp.*, 2017 WL 4011240, at *3 (E.D.N.Y. Sept. 11, 2017) (holding that *Hertz* rejected the Second Circuit's place of operations test); *see also Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 104 (4th Cir. 2011). Because the prevailing law requires application of the "nerve center" test articulated in *Hertz*, the Court declines the invitation to resurrect the "place of operations" test.

[10] Defendants claim that because Snape has lived in London since February 2022, the Company was directed, controlled, and coordinated from outside New York; but, as described above, Defendants have failed to establish that Snape was domiciled in the U.K. *See supra* at 5–9. Thus, Defendants must provide some other evidence to show that Snape principally ran the business from the U.K.

None of the evidence Defendants offer establishes that Snape directed the Company from the U.K. Defendants fail to provide persuasive evidence such as, for example, a lease agreement, rent or utility payments, or declarations from building occupants or staff corroborating Snape's presence at or control of the Company from the London co-working office — evidence that should have been relatively simple to furnish if Snape had, in fact, directed the Company from that location. Although such evidence would not be dispositive of the Company's principal place of business, it might, at the very least, have tipped the scales in Defendants' favor.

Defendants also point to the fact that Re.Imagin has been incorporated in the U.K. as evidence that it has its principal place of business there. *Id.* ¶ 17, Ex. I. There are multiple problems with this claim. First and foremost, the invoice submitted by Defendants purportedly to prove incorporation in the U.K.[11] refers to forming and registering "RE.IMAGIN LTD." *Id.* Plaintiff correctly notes that Re.Imagin, Inc. is the corporate Defendant in this action, not Re.Imagin, Ltd. Decl. of Srinivas Paruchuri ¶ 5(k), Dkt. 15-1. Even assuming Defendants had demonstrated that the two entities are the same (there was no such proof), incorporation alone does not establish the company's principal place of business or nerve center. *See* 28 U.S.C. § 1332(c)(1); *Hertz*, 559 U.S. at 88 (noting that Congress codified corporate citizenship for jurisdictional purposes in § 1332 to include "principal place of business" alongside the courts' traditional 19th century place of incorporation test); *id.* at 93 ("[I]n practice [the 'principal place of business'] should normally be the place where the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the

---

[11] The invoice refers to services rendered by a U.K. company called "Rapid Formations" for a "Non-Resident's Package" for RE.IMAGIN LTD. Decl. of Jennifer Snape, Ex. I, Dkt. 12-1. A Google search reveals that Rapid Formations offers a "Non-Residents Package" for "non-UK residents" "who want to set up a limited company in the UK." https://www.rapidformations.co.uk/compare-packages/non-residents (last visited June 16, 2023). Snape never explains why she used a "Non-Residents Package" given her claim that she was domiciled in the U.K.

'nerve center' . . . ."). At most, incorporation in the U.K. would show that the Company was prepared to conduct some business activity there.[12] More would be needed to show that the Company was directed, controlled, or coordinated from the U.K. *Hertz*, 559 U.S. at 97 ("[W]e reject suggestions . . . that the mere filing of a form . . . would, without more, be sufficient proof to establish a corporation's 'nerve center.'"); *compare JS Barkats PLLC v. Blue Sphere Corp.*, 2017 WL 2930935, at *4 (S.D.N.Y. July 10, 2017) (finding a CFO's affidavit and three SEC filings insufficient to establish the "nerve center") *with Chambers v. Slade Indus., Inc.*, 2018 WL 11450160, at *2 (S.D.N.Y. Oct. 25, 2018) (finding sufficient an in-state corporate headquarters as well as in-state offices for all corporate officers and directors, with corroborating proof of in-state business registration and corporate standing certificates and out-of-state government recognition of the headquarters' in-state address).

Defendants fail to demonstrate that Snape, or anyone else for that matter, directed or controlled the business from the U.K. in any meaningful way. To the contrary, the evidence reflects that the Company was commonly directed from New York — including evidence that Snape, the Company's sole officer, was frequently in New York to discuss business strategy, secure financing, and meet with vendors. *See, e.g.*, Decl. of Srinivas Paruchuri ¶¶ 14(b), (e)–(f); Ex. 8, Dkt. 10-10; Ex. 11, Dkt. 10-13; Ex. 12, Dkt. 10-14; Decl. of Srinivas Paruchuri ¶¶ 5(h)–(i); Ex. 34, Dkt. 15-11; Ex. 35, Dkt 15-12. Although there is some evidence suggesting that Snape and Plaintiff occasionally scheduled meetings in the U.K., Decl. of Jennifer Snape ¶¶ 25–26, Ex. E, Dkt. 12-1; Decl. of Srinivas Paruchuri ¶¶ 5(e)–(g), Exs. 29–33, Dkts. 15-6–10, Snape's email communications suggest, at most, temporary rather than sustained presence in the

---

[12] That the Company sought incorporation in the U.K. is compatible with the theory that Snape wanted to solicit investment in the U.K. while working entirely from the NYC Apartment. *See* Decl. of Srinivas Paruchuri, Ex. 33, Dkt. 15-10 (June 23, 2022 email about "fundraising" in which Snape stated, "We have a few angels that are UK based. Through the SEIS tax relief program, it would be helpful if we were incorporated in the UK.").

U.K. on company business.  *Compare* Decl. of Srinivas Paruchuri, Ex. 30 ("[W]e'll both be in the UK next week — happy to meet with you in person.") *and* Ex. 31 ("Vas and I are both in London this week for a few meetings.") *with* Ex. 34 (email from Snape stating: "I'll share a calendar invite. I'm in NYC."), *and* Ex. 35 ("Would it be possible to find 30 minutes [to meet] . . . ?  [Plaintiff and I are] both based in NYC.").

Finally, although Snape expressed some desire eventually to relocate the Company's operations to the U.K., *see* Decl. of Srinivas Paruchuri, Ex. 36, Dkt. 15-13 (July 27, 2022 email from Snape reflecting a future organizational structure with an "Operating Company" in the U.K. in "6-18 months"), "the jurisdiction of the court depends upon the state of things at the time [the action is brought]," not at some point in the future, *Benchmark Invs., Inc. v. PAVmed Inc.*, 2021 WL 5967918, at *2 (S.D.N.Y. Dec. 16, 2021).  Without more, even if the Defendant corporate entity were incorporated in the U.K., that would not establish that Re.Imagin was being directed, controlled, and coordinated from outside New York.

Not only have Defendants failed to provide persuasive evidence that the Company's principal place of business was in the U.K., they have also failed to grapple with the overwhelming evidence that indicates the Company's principal place of business was in New York.  For example, the Company's Delaware Certificate of Incorporation and its application to the IRS for an Employer Identification Number lists the NYC Apartment as the relevant mailing address.[13]  Decl. of Srinivas Paruchuri ¶¶ 5(a)–(b); Ex. 25, Dkt. 15-2; Ex. 26, Dkt. 15-3.  Significantly, Snape executed several confidentiality agreements on behalf of the Company between April and August 2022, including with Plaintiff, contractors, and potential customers,

---

[13] Snape claims that her counsel used the NYC Apartment address in the articles of incorporation while she was "physically in the UK," but she provides no explanation why this occurred given her claimed presence in London.  Decl. of Jennifer Snape ¶ 19, Dkt. 12-1.

all of which list the NYC Apartment address directly below the Company's signature line (which Snape herself signed as CEO). *See* Decl. of Srinivas Paruchuri ¶¶ 15(a)–(f), Exs. 15–20, Dkts. 10-17–22; *see also id.* ¶ 15(g), Ex. 21, Dkt. 10-23 (draft consultancy agreement reflecting edits made by "jlsnape" on June 28, 2022 to the NYC Apartment address for "Reimag.in, Inc.").[14] The confidentiality agreements also contain a "Consent to Jurisdiction" clause, designating the forum for all disputes as "the state or federal courts located in the city and state set forth beneath the signature of the Company's authorized representative below," i.e., "New York, NY," the NYC Apartment address. *See, e.g.*, Decl. of Srinivas Paruchuri, Ex. 19 at 3. Furthermore, Snape admits to spending 87 days in New York during 2022 while she was the Company's CEO, Decl. of Jennifer Snape ¶ 9, Dkt. 12-1; as noted *supra*, Snape does not claim to have spent any specific amount of time in any other single location from which she was directing the business. *Cf. Sebastian Holdings, Inc. v. Kugler*, 2012 WL 1190837 (D. Conn. Mar. 30, 2012) (holding that a party failed to establish its principal place of business was outside of the state in which its sole director spent 60 days per year).

In short, Defendants have failed to meet their burden of proving by a preponderance of the evidence that Re.Imagin's principal place of business was somewhere other than New York.[15]

---

[14] Snape claims that she used the NYC Apartment address on company documents "[i]n the early stages" on the advice of her prior counsel. Decl. of Jennifer Snape ¶ 20, Dkt. 12-1. Snape is under no obligation to divulge privileged communications to rebut Plaintiff's evidence, but she must do more than simply imply that she was advised by her attorney to misrepresent the company's address on legal and financial documents. Additionally, characterizing the signing dates of these documents as "early" is misleading: Snape's use of the NYC Address on these Company agreements occurred while she claims she was directing the business from London, just months prior to the start of this action. Decl. of Srinivas Paruchuri, Exs. 15–20.

[15] Plaintiff also alleges a defect in Defendants' Notice of Removal under S.D.N.Y. Local Civ. R. 81.1(1) as a basis for granting the motion to remand. Pl. Mem. at 8–9. Because the Court grants Plaintiff's motion on the merits, it does not reach the alleged procedural defects of the Notice.

### III. Plaintiff's Motion for Attorneys' Fees and Costs Is Denied

Plaintiff seeks costs under 28 U.S.C. § 1447(c). Pl. Mem. at 9–10. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The general principle underpinning fee awards in cases where removal was improper is to "deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party . . . ." *Id.* at 140. But "'if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees . . . .'" *Williams v. Int'l Gun-A-Rama*, 416 F. App'x 97, 99 (2d Cir. 2011) (quoting *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007)); *see Calabro v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011) (holding that the district court properly awarded attorneys' fees and costs under § 1447(c) when defendant improperly sought removal for the entire case on the basis of its third-party complaint).

Although it is a close call, the Court cannot conclude that Defendants did not have an "objectively reasonable basis for seeking removal." The Court notes, however, that counsel for Defendants should not have furnished exhibits which appear incomplete, such as, for example, Exhibit F (email reflecting a "successful" "application" to The Conduit, but none of the accompanying text); and Exhibit I (invoice for U.K. incorporation of "RE.IMAGIN LTD" which breaks in the middle of the page). *See Martin*, 546 U.S. at 141 (noting that "failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees."). Counsel also should have understood that the numerous facts tying Defendants to New York would have made successful removal very unlikely. But because some, albeit little, evidence ties

15

Defendants to the U.K., the Court is unable to conclude that their basis for removal was not objectively reasonable.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is GRANTED. Plaintiff's motion for attorneys' fees and costs is DENIED.

The Clerk of Court is respectfully directed to REMAND this case to the Supreme Court of the State of New York for New York County. The Clerk shall also terminate all open motions and close this case.

**SO ORDERED.**

**Date: June 29, 2023**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**